UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC RAHMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 25-cv-05171-PCP<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Eric Rahman brings this lawsuit against Google, LLC arising from Google's March 2023 termination of Rahman's employment. Google now moves to dismiss all of Rahman's claims except for those arising under the Uniformed Services Employment and Reemployment Rights Act (USERRA). For the following reasons, the Court grants Google's motion.

**BACKGROUND**

Rahman was employed by Google from June 2020 through March 2023.[1] At the same time, he was an enlisted reservist in the Army. Rahman was hired during the pandemic and worked remotely from his home in Florida. He visited California in connection with his job but was never formally assigned to an office. In his complaint, Rahman alleges that he traveled to Google's Mountain View headquarters "on multiple occasions" but specifically identifies only two meetings in June and December 2021.

Rahman worked as a "Field Sales Representative." In that role, he helped Google secure a software sale to the US Army worth nearly $19 million. Rahman alleges that, at some point during the deal, he was "sidelined" by his direct supervisor and was ordered to "stop focusing on" the

---

[1] For the purposes of Google's Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Rahman's complaint.

1  software sale. Rahman claims this was because his supervisor wanted to "remove [him] from the
2  DoD team altogether, thereby avoiding very large commissions that were coming due for
3  Plaintiff." Rahman alleges that he was fired while "away on military duty."
4    Rahman filed suit on June 18, 2025, asserting the following causes of action against
5  Google: (1) wrongful termination in violation of public policy under California's Fair
6  Employment and Housing Act (FEHA); (2) discrimination based on military status in violation of
7  FEHA; (3) failure to prevent discrimination in violation of FEHA; (4) retaliation in violation of
8  FEHA; (5) discrimination in violation of USERRA; (6) breach of contract; (7) violation of
9  California Business and Professions Code § 17200; (8) intentional infliction of emotional distress;
10 and (9) negligent infliction of emotional distress.

## LEGAL STANDARDS

12   The Federal Rules require a complaint to include a "short and plain statement of the claim
13 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint does not do
14 so, the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Dismissal is
15 required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference
16 that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
17 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable
18 legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela*
19 *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a
20 plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell*
21 *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
22   In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the
23 complaint as true and construe the pleadings in the light most favorable" to the non-moving party.
24 *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal
25 conclusions "can provide the [complaint's] framework," the Court will not assume they are correct
26 unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept
27 as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
28 inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*

2

*v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

**I.      Rahman fails to establish a basis for applying FEHA extraterritorially.**

Google moves to dismiss Rahman's FEHA claims on the ground that he has not pleaded facts sufficient to support applying that California statute to work that he performed primarily in Florida, where he resided throughout his employment by Google.

The "extraterritorial application of FEHA is determined by the situs of both [(1)] employment and [(2)] the material elements of the cause of action, as opposed to residence of the employee or the employer." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017). Rahman's allegations regarding the situs of his employment and the underlying elements are sparse. He alleges that the only Google office he visited was its Mountain View, California location, and that he traveled to the Mountain View location "on multiple occasions" to "meet with and brief Google executives" regarding the Army Workspace deal. Dkt 15, 16. He names only one executive who attended those meetings. In addition, Rahman alleges that he was "specifically hired due to his network and reputation within the United States Army Reserve," and that the main projects he worked on—Project Maven and Army Workspace—benefitted from that network. *Id*. at 6, 7. Although Rahman names several executives with whom he met and offers specific tasks he completed for them (for example, "Mr. Rahman was tasked with drafting congratulatory correspondence to senior defense officials on behalf of Mr. Sundar Pichai, CEO of Alphabet"), he fails to allege that any of these tasks were performed in a particular geographic location.

These sparse allegations are insufficient to establish a basis for applying FEHA to Rahman's employment. The situs of employment is generally the employee's principal place of work. *Hill v. Workday, Inc*., 773 F. Supp. 3d 779, 793 (N.D. Cal. 2025). Here, Rahman pleads few facts to place his principal place of employment *anywhere*, let alone in California, and the limited facts he does provide suggest he was principally working in Florida. The only allegations potentially relevant to California are those involving two meetings at the Google offices in Mountain View. But courts in this district have rejected the argument that such a small number of

3

1  meetings is enough to establish a situs of employment. *See Hill*, 773 F. Supp. 3d at 795 (finding
2  that a week of meetings in California was not enough to establish a situs there). While the
3  Mountain View office may have been the only Google office Rahman "set foot in" during the
4  entirety of his tenure, he does not allege any additional facts that help the Court place those
5  meetings in context, such as whether those were the only two in-person meetings of his entire
6  tenure or where the major stakeholders in his projects were located. As a result, Rahman fails to
7  plead facts sufficient to meet the first *Russo* prong.

8  To evaluate the second prong of the *Russo* test, courts typically look to "the location of
9  where the core of the alleged wrongful conduct occurred." *Id.* at 794 (collecting cases). Rahman
10 once again fails to allege any facts identifying the location of actions by the alleged tortfeasors.
11 Even assuming that the bulk of Rahman's work—the Workspace deal—involved matters of
12 significant concern to Google's leadership in California, that work is only peripherally related to
13 the wrongful conduct underlying Rahman's claims: his purportedly wrongful termination after
14 completing that work. The facts relevant to *that* conduct are not pleaded with any specificity as to
15 their location. Rahman does not specify, for example, where the individuals who made the
16 decision to terminate his employment were located.

17 Because Rahman fails to allege the facts necessary to support the extraterritorial
18 application of FEHA, his FEHA claim is dismissed with leave to amend. And because Rahman's
19 seventh cause of action under California's Unfair Competition Law depends upon an underlying
20 FEHA violation, that claim is also dismissed with leave to amend.

21 **II.     Rahman fails to allege a breach of contract.**

22 Google moves to dismiss Rahman's breach of contract claim on the ground that he has not
23 alleged the terms of the contract at issue with sufficient specificity.

24 To plead a proper breach of contract claim, a plaintiff must "allege in the complaint the
25 terms of the contract or attach a copy of the contract to the complaint." *Langan v. United Servs.*
26 *Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citing *Twaite v. Allstate Ins. Co.*, 216 Cal.
27 App. 3d 239, 252 (1989)). These terms need not be "precis[e]" but should be clear enough to
28 demonstrate what the material terms of the contract were. *Id*.

4

In support of his breach of contract claim, Rahman alleged that he was denied a "commission" for the "Army Workspace" deal that was promised under his employment contract. As evidence, he submits a "Sale Bonus Plan" that was included in his offer letter. The portion of the bonus plan submitted by Rahman contains a condition precedent ("to receive your quarterly bonus, you must be employed on the last day of the performance period aligned to the end of the quarter") and an eligibility clause ("you'll be told if you're on a sales bonus plan").

Rahman relies on the plan to establish his contract clam, but the allegations within that claim fail to meet the pleading requirements of Fed. R. Civ. P. 8(a). Rahman's complaint does not establish either the existence of a contract or a breach of its terms. Although he distinguishes between commissions and bonuses in his complaint, he alleges only that he was "deprived of significant commissions to which he was otherwise entitled" and never describes the relationship between the Sale Bonus Plan and the allegedly denied commissions. He also fails to allege how any "quarterly bonus" due under the Plan would be calculated. And even if the Court were to accept that the Sale Bonus Plan constituted a contract for commissions, Rahman does not allege that he met either contingency in the plan. He fails to plead any facts specifying what quarter the deal was completed in, the dates of that quarter, and whether he was "employed" on the last day of that quarter. He also never alleges that he was "told" that he was on the Sale Bonus Plan, only that he was "eligible to participate in [it]."

Because Rahman's existing complaint fails to plead a valid breach of contract claim, the claim is dismissed with leave to amend.

**III. Rahman's claims for wrongful termination, intentional infliction of emotional distress, and negligent infliction of emotional distress are time-barred.**

Rahman's common law claims are subject to a two-year statute of limitations. Cal. Civ. Proc. Code § 335.1. Rahman's last day of employment with Google was March 31, 2023. He filed this suit on May 12, 2025, more than two years later. As a result, his common law claims are untimely on their face unless he is entitled to relief from the statute of limitations. Rahman argues that his filing of a USERRA administrative claim with the U.S. Department of Labor, Veterans' Employment and Training Service ("VETS") on July 25, 2022, equitably tolled the statute of

limitations on his common law claims.

"California's equitable tolling of a limitations period 'is a judicially created, nonstatutory doctrine ... designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitation—timely notice to the defendant of the plaintiff's claims—has been satisfied.'" *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1121 (N.D. Cal. 2017) (citing *McDonald v. Antelope Valley Community College Dist.*, 194 P.3d 1026, 1031 (Cal. 2008)). Two of Rahman's common law claims—wrongful termination and negligent infliction of emotional distress—are rooted in Google's decision to terminate him. That decision, however, occurred nearly a year *after* Rahman filed his VETS complaint. As a result, the complaint did not provide Google with notice of any claims arising out of Rahman's allegedly wrongful termination. Because the conduct at issue in the administrative complaint was distinct from the conduct that forms the basis for his wrongful termination and negligent infliction of emotion distress claims, the filing of the VETS complaint could not have tolled the statute of limitations on those claims. *See Cheeney v. Highland Cmty. Coll.*, 15 F.3d 79, 82 (7th Cir. 1994) ("[P]ursuit of an administrative remedy unrelated to a later filed [] claim does not toll the statute of limitations for the [later filed] claim.") (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975)).

Rahman's claim for intentional infliction of emotional distress is rooted more generally in Google's "conduct," rather than solely in his allegedly wrongful termination. As a result, there is at least a possibility that the VETS complaint provided Google with notice of Rahman's intentional infliction of emotional distress claim. The problem for Rahman, however, is that the VETS complaint process Rahman pursued involved procedures and remedies wholly distinct from his common law intentional infliction of emotional distress claim.

Tolling is a matter of state law, and California courts have yet to decide whether common law claims may be tolled during VETS proceedings. The Court must therefore predict how the California Supreme Court would resolve the issue, "using intermediate appellate court decisions … as guidance." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996).

In considering whether California would toll the statute of limitations while Rahman's VETS complaint was pending, the most relevant California Court of Appeal decision is *Mathieu v.*

6

*Norrell Corp.*, 115 Cal. App. 4th 1174 (2004). *Mathieu* concluded that the plaintiff's filing of a FEHA claim with the California Department of Fair Employment and Housing ("DFEH") (now the California Civil Rights Department) did not toll the statute of limitations on the plaintiff's common law claim of wrongful termination in violation of the public policy. *Id.* at 1189. The court noted that California Supreme Court has declined to find tolling where a common law cause of action provides an independent alternative to pursuing an administrative claim and there is no requirement to exhaust any administrative remedies before pursuing the common law claim. *Id.*

That analysis applies with equal force to Rahman's common law claim for intentional infliction of emotional distress. Rahman was not required to pursue his USERRA claim through the VETS administrative process before he could file suit alleging intentional infliction of emotional distress, and that common law claim provided him with an entirely independent alternative to pursuing any administrative remedy. *Mathieu* thus counsels that the statute of limitations on Rahman's common law claims was not tolled while his VETS claim was pending, and Rahman has not identified any contrary California caselaw suggesting that the California Supreme Court would not adopt *Mathieu*'s analysis.

Rather than contending that *Mathieu* was wrongly decided, Rahman argues that equitable tolling should be treated differently under FEHA and USERRA. He notes that administrative exhaustion of a FEHA claim before the DFEH only requires obtaining a right to sue letter, while the administrative processing of his VETS administrative claim "ultimately proved to be a two-year process." But if anything, the differences between the DFEH and VETS processes strengthen the Court's conclusion that the VETS claim did not toll Rahman's statute of limitations for his common law claims. Unlike a FEHA claim, Rahman was not required to pursue an administrative remedy with VETS before he could assert his USERRA claim in federal court. 38 U.S.C. §§ 4322, 4323. He therefore did not need to "await the outcome of the [agency] processing his claims in order to receive the full benefit of an investigation." *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1326 (9th Cir. 1987). And when an administrative remedy is unrelated to the plaintiff's ability to file a common law tort claim, the length of time involved in pursuing the administrative remedy is irrelevant. *See Johnson*, 421 U.S. at 460-61 (holding that when an administrative

7

proceeding and a common law claim provide two entirely separate remedies, one cannot toll the other).

Rahman fails to provide any reason why he might be entitled to equitable tolling of the statute of limitations with respect to his common law claims. Because his claims for wrongful termination, intentional infliction of emotional distress, and negligent infliction of emotional distress are time-barred on their face, those claims are dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, Google's motion to dismiss is granted. Dismissal is with leave to amend except as to the common law claims. Any amended complaint must be filed within 35 days of the date of this Order. If no amended complaint is filed, Rahman's non-USERRA claims against Google will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: November 5, 2025

P. Casey Pitts
United States District Judge